# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| COSRX INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 25-cv-09432 |

## COMPLAINT

Plaintiff COSRX Inc. ("COSRX" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by COSRX to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed skincare products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. COSRX Inc. is a corporation organized and existing under the laws of South Korea, having its principal place of business at 5th Floor, Center Field, 231 Teheran-ro, Gangnam-gu, Seoul, Korea.

5. Founded in 2013, COSRX is one of the fastest-growing skincare brands that is known for its effective products that focus on skin friendly ingredients. In 2023, COSRX was acquired by Amorepacific Corporation, a South Korean beauty and cosmetics company that operates more than 30 beauty, personal care, and health brands.

6. COSRX provides a comprehensive collection of cutting-edge skincare products for daily skincare and to complement skin-rejuvenating procedures, including award winning serums, sunscreens, cleansers, and other treatments (the "COSRX Products"). COSRX, through its cult favorite products, is a leader in Korean skincare brands and among the pioneers in the worldwide phenomenon of "K-Beauty" with an average sales growth rate of over 60% in the past five years. COSRX products have become staples in the skincare routines of millions of consumers worldwide. Of its over $150 million in annual sales, more than 90% are to consumers outside of Korea, with the United States in the top three of consumer countries.

7. COSRX Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized COSRX skincare providers and the official.COSRX.com website.

8. Plaintiff incorporates a variety of distinctive marks in the design of its various COSRX Products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered its trademarks with the United States Patent

and Trademark Office. COSRX Products typically include at least one of Plaintiff's registered trademarks. Plaintiff uses its trademarks in connection with the marketing of its COSRX Products, including the following marks which are collectively referred to as the "COSRX Trademarks."

| Registration Number | Registered Trademark |
|---|---|
| 6,481,892<br>7,284,973<br>5,271,842 | COSRX |
| 7,324,606 | COSRX ADVANCED SNAIL |
| 7,324,660 | Advanced Snail (image) |
| 7,324,657 | Advanced Snail (image) |

9. The above U.S. registrations for the COSRX Trademarks are valid, subsisting, in full force and effect, and Reg. No. 5,271,842 is incontestable pursuant to 15 U.S.C. § 1065. The registrations for the COSRX Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the COSRX Trademarks pursuant to 15 U.S.C. § 1057(b). Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the COSRX Trademarks are conclusive evidence of the validity of Plaintiff's COSRX Trademarks and of the registrations of the COSRX Trademarks, of Plaintiff's ownership of the COSRX Trademarks, and

4

of Plaintiff's exclusive right to use the COSRX Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the COSRX Trademarks included in the above table.

10. The COSRX Trademarks are exclusive to Plaintiff and are displayed extensively on COSRX Products and in Plaintiff's marketing and promotional materials. Plaintiff has expended substantial time, money, and other resources in advertising and promoting the COSRX Trademarks. In fact, Plaintiff has expended millions of dollars in advertising, promoting, and marketing featuring the COSRX Trademarks. COSRX Products have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative formulations. Because of these and other factors, the COSRX name and COSRX Trademarks have become famous throughout the United States and around the world.

11. The COSRX Trademarks are distinctive when applied to the COSRX Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. The COSRX Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the COSRX Trademarks is of incalculable and inestimable value to Plaintiff.

12. Plaintiff operates an e-commerce website where it promotes and sells COSRX Products at official.COSRX.com. Sales of COSRX Products via the official.COSRX.com website represent a significant portion of Plaintiff's business. The official.COSRX.com website features proprietary content, images, and designs exclusive to COSRX.

**The Defendants**

13. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

14. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

15. The success of the COSRX brand has resulted in significant counterfeiting of the COSRX Trademarks. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as PayPal, Amazon, eBay, Walmart, and Temu including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for

Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

16. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

17. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[3] *Id.*; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, supra note 4, at p. 186-7.

U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

18. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the COSRX Trademarks and none of the Defendants are authorized retailers of COSRX Products.

19. Many Defendants also deceive unknowing consumers by using the COSRX Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for COSRX Products. Other e-commerce stores operating under the Seller Aliases omit using COSRX Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for COSRX Products.

20. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

21. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

23. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that offshore counterfeiters regularly

move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of this Court.

25. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly, and willfully used and continue to use the COSRX Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

26. Defendants' unauthorized use of the COSRX Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered COSRX Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The COSRX Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from COSRX Products offered, sold, or marketed under the COSRX Trademarks.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the COSRX Trademarks without Plaintiff's permission.

30. Plaintiff is the exclusive owner of the COSRX Trademarks. Plaintiff's United States Registrations for the COSRX Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the COSRX Trademarks and are willfully infringing and intentionally using counterfeits of the COSRX Trademarks. Defendants' willful, intentional, and unauthorized use of the COSRX Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known COSRX Trademarks.

33. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff. By using the COSRX Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its COSRX brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the COSRX Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine COSRX Product or is not authorized by Plaintiff to be sold in connection with the COSRX Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine COSRX Product or any other product produced by Plaintiff, that is not Plaintiff's or

> not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the COSRX Trademarks;
>
> c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;
>
> d. further infringing the COSRX Trademarks and damaging Plaintiff's goodwill; and
>
> e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the COSRX Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, PayPal, Amazon, eBay, Walmart, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the COSRX Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the COSRX Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the COSRX Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 8th day of August 2025.   Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Rachel M. Ackerman
Greer, Burns & Crain, Ltd.
200 W. Madison St. Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
rackerman@gbc.law

*Counsel for Plaintiff COSRX Inc.*